Filed 7/2/26  Valdes v. Murrey CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| VANESSA VALDES,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>STEWART LUCAS MURREY,<br><br>        Defendant, Cross-complainant and Respondent. | B346857<br><br>(Los Angeles County Super. Ct. No. 24STCV16656) |

        APPEAL from an order of the Superior Court of Los Angeles County.  Cherol J. Nellon, Judge.  Reversed and remanded with directions.

        Vanessa Valdes, in pro. per., for Plaintiff, Cross-defendant and Appellant.

        Stewart Lucas Murrey, in pro. per., for Defendant, Cross-complainant and Respondent.

————————————

This appeal is part of an ongoing legal battle between appellant Vanessa Valdes (Valdes) and respondent Stewart Lucas Murrey (Murrey). Valdes appeals the trial court's order denying her motion to strike Murrey's cross-complaint pursuant to the anti-SLAPP law (Code Civ. Proc., § 425.16).[1] We conclude that the court erred in denying the motion, because (1) the activity underlying eight of Murrey's 11 tort claims is not illegal as a matter of law and (2) Murrey failed to demonstrate a reasonable probability of prevailing on the remaining three claims for abuse of process, conspiracy to abuse process, and malicious prosecution. Accordingly, we reverse the order denying Valdes's anti-SLAPP motion and remand for further proceedings as directed below.

## BACKGROUND

### I. The Origin of The Parties' Dispute

In December 2019, Murrey messaged Valdes on a dating application (the app), inviting her to "hang [out]" with him and providing his phone number. Valdes responded with "Bold move" and a smiley emoticon.

This exchange prompted Murrey to launch into a tirade. Among other things, he claimed that he had only sought Valdes's company because he was "amused by how [she would] mess it up[,]" berated her for including pictures of herself standing next to a man in her dating profile, called her a "moron[,]" and said "it's fun watching you burn lol [i.e. 'laugh out loud']." Valdes

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

warned Murrey she would report him to the app.  Murrey called her a "loser" and "moron[,]" threatened to "subpoena[] [her] idiot 'report' and possibly su[e] [her] for defamation[,]" and accused her of being "jealous when rejected."  Valdes reported Murrey, saying that she felt "threatened" by their exchange and was "afraid for any woman who agrees to meet with him in person[,]" and blocked him on the app.  Murrey also blocked Valdes.

In August 2022, Valdes saw a post about Murrey in the Los Angeles chapter of a private Facebook group called "Are We Dating The Same Guy?" (the Facebook group).  The post received comments from hundreds of Facebook users, many of them women who either shared stories of disturbing encounters with Murrey or expressed shock and dismay at his alleged conduct.  Valdes "felt . . . [the] need[,] in the interest of public safety[,] to share [her] story along with all the other testimonials[.]"  She posted the following comment:  "HOW HAS THIS GUY NOT BEEN REMOVED FROM DATING APPS AND ARRESTED ALREADY?!?! [¶] I matched with him a couple years ago and received the most BIZARRE and threatening messages from him! It was so weird and scary that I even reported him to [the app], but never knew if anything was done about him.  APPARENTLY NOT!!  I'm so disgusted to see all these horrible testimonials about him, because it means he gets away with everything.  He needs to be stopped!!"  Valdes included screenshots of her exchange with Murrey, redacting his phone number, and the report she made to the app.

## II.    Murrey's Lawsuit Against Valdes and Others

In June 2023, Murrey sued Valdes and multiple other women who posted in the Facebook group and similar groups. Murrey accused these women of "conspir[ing] to harm [his]

3

reputation and violate his right to free speech based upon his sex and other discriminatory elements[.]" Among other things, Murrey brought causes of action for (1) libel, (2) sex discrimination, (3) gender violence, (4) false light, (5) invasion of privacy, (6) intentional infliction of emotional distress (IIED), (7) intentional interference with prospective economic advantage, (8) negligent interference with prospective economic advantage, and (9) civil conspiracy.

Valdes moved to strike Murrey's complaint as to her pursuant to the anti-SLAPP law. In April 2024, the motion was granted.

## III. The Restraining Order

In April 2024, Valdes filed a petition for a civil harassment restraining order against Murrey. She alleged that Murrey "made several posts on public websites[] . . . that included [her] personal information . . . as well as false claims and accusations regarding [her] character, actions, and behaviors." For example, in September 2023, Murrey published an article in which he stated that Valdes had "appeared in both police and FBI reports for the[] serious crimes of cyber[]bullying and electronic harassment[,]" and accused her of being part of a vast conspiracy involving "social media companies" and Israeli and United States intelligence agencies.

As a result, Valdes "received digital hate mail." She attached to her petition an email from a user going by the name "JC Roux[,]" which read as follows: "To the lovely ladies currently representing themselves against this vicious lawsuit [e.g. Murrey's 2023 lawsuit] . . . [¶] At least [Murrey] is going to f*** you dumb c**** for real" (the email). Valdes characterized the email as "[h]ate mail received from an unknown source due to

4

[Murrey's] lies and inflammatory language about [her] and [her] co-defendants."

In July 2024, Valdes's petition was denied for "fail[ure] to sustain [her] burden of proof."

**IV.    The Instant Lawsuit**

In July 2024, Valdes filed a "SLAPPback" lawsuit against Murrey.[2]

In February 2025, Murrey filed a cross-complaint alleging 11 causes of action against Valdes, namely: (1) abuse of process, (2) malicious prosecution, (3) doxing,[3] (4) negligence, (5) civil harassment, (6) civil extortion, (7) gender violence, (8) false light, (9) IIED, (10) cyberbullying, and (11) conspiracy to commit several of the aforesaid torts.

Murrey's allegations fall into three categories.  First, he alleged that Valdes's August 2022 Facebook post was "false and intentionally harmful" and that Valdes "conspired with" other users on the Facebook group to publicly post Murrey's private information, including the "private texts" Murrey sent her on the app.  Second, Murrey claimed that Valdes helped create a

---

[2]    " 'SLAPPback' means any cause of action for malicious prosecution or abuse of process arising from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under" the anti-SLAPP law.  (§ 425.18, subd. (b)(1).)

[3]    " 'Doxing' is a relatively recent Internet-based form of harassment that involves posting a target's private personal information online so it can be used by other parties—perhaps the poster's supporters or internet 'trolls'—to attack the targeted individual."  (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 145, fn. 1 (*Dziubla*).)

5

fundraising webpage to raise legal funds for the defendants in Murrey's prior lawsuit (the GoFundMe page). Murrey's 2019 messages to Valdez were republished to the GoFundMe page, embellished with "clown symbols[.]" Murrey claimed that the widespread publicization of the GoFundMe page resulted in him receiving death threats on Facebook. Third, Murrey alleged that Valdes maliciously filed both an unsuccessful request for a civil harassment restraining order and the instant lawsuit against him.

In March 2025, Valdes filed an anti-SLAPP motion to strike the cross-complaint. Valdes argued that Murrey's cross-complaint, which largely duplicated the claims in his prior unsuccessful lawsuit, targeted protected activity and was "retaliatory and meritless." Murrey opposed the motion.

## V.    Ruling; Appeal

In April 2025, Valdes's anti-SLAPP motion proceeded to a hearing. One month later, the trial court denied the motion. The court found that Murrey's claims for doxing, negligence, civil harassment, civil extortion, gender violence, false light, IIED, cyberbullying (and derivative conspiracy claims) arose from protected activity, but were not subject to the anti-SLAPP statute because Valdes's activity constituted criminal doxing as a matter of law. Accordingly, the court proceeded to the second prong of the anti-SLAPP statute only as to Murrey's claims for abuse of process and malicious prosecution (and derivative conspiracy claims). The court determined that Murrey showed a reasonable probability of prevailing on those claims.

Valdes timely appealed.

## DISCUSSION

## I.    The Anti-SLAPP Law

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) "In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute." (*Ibid.*; see § 425.16, subd. (a).)

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." This procedure is intended to "weed[] out, at an early stage, meritless claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384, italics omitted.)

"[A] trial court tasked with ruling on an anti-SLAPP motion must ask two questions: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation], and, if so, (2) has the nonmoving party 'established . . . a probability that [it] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' [citations]?" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887.)

## II. Standard of Review

"We review de novo the . . . denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) In so doing, we "consider the

pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "[W]e do not weigh evidence or resolve conflicting factual claims[,]" and "must draw all reasonable inferences from the evidence in favor of [Murrey] as the plaintiff[]" on the countersuit targeted by the anti-SLAPP motion. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 720.)

## III.  Analysis

### A.  *Protected Activity*

Valdes challenges the trial court's determination that eight of Murrey's claims—namely, doxing, negligence, civil harassment, civil extortion, gender violence, false light, IIED, cyberbullying, and conspiracy to commit the aforesaid—did not arise from protected activity.

#### 1.  Murrey's claims arise from protected activity

Under the anti-SLAPP statute, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.' [Citations.]" (*Park*, *supra*, 2 Cal.5th at pp. 1062–1063, italics omitted; see also *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 [to determine whether a claim arises from protected activity, courts consider " 'what actions by the defendant supply th[e] elements [of the challenged claims] and consequently form the basis for liability' "].)

Murrey's claims arise from protected activity.  His assorted tort claims are predicated upon Valdes publishing personal messages between herself and Murrey on the Facebook group and the GoFundMe page (doxing, negligence, civil harassment, civil

8

extortion, gender violence, false light, IIED, cyberbullying, conspiracy) and filing a police report, restraining order, and/or SLAPPback suit against Murrey (negligence, civil harassment, false light, IIED). All of this conduct stems from either protected speech or petitioning activity. (§ 425.16, subd. (e); see also § 425.16, subd. (a) [the anti-SLAPP law "shall be construed broadly" to "encourage continued participation in matters of public significance"].) On appeal, Murrey does not dispute this characterization of Valdes's activity.

> 2. <u>Valdes's activity was not illegal as a matter of law</u>

If "the evidence conclusively establishes[] that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) In this context, the word "illegal" means that the underlying conduct is criminal. (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806 ["[T]he *Flatley* rule applies only to criminal conduct, not to conduct that is illegal because [of a] violation of statute or common law."].)

At the trial court and on appeal, Murrey argues that Valdes's publication of private messages on the Facebook group and on the GoFundMe page constitutes criminal doxing. The trial court agreed with him. We do not.

Section 653.2 of the Penal Code prohibits the "electronic . . . distribut[ion][] [or] publi[cation] . . . [of] personal identifying information, including, but not limited to . . . an electronic message of a harassing nature about another person, which would be likely to incite or produce" "unwanted physical contact,

9

injury, or harassment[] by a third party." (Pen. Code, § 653.2, subd. (a).) The statute also requires that the defendant act "with intent to place another person in reasonable fear for his . . . safety" and "for the purpose of imminently causing that other person unwanted . . . harassment[] by a third party[.]" (*Ibid.*)

Even construed in the light most favorable to Murrey, the evidence does not conclusively show that Valdes acted with the specific intent required for doxing liability. Murrey's own evidence places Valdes's intent in dispute. To the declaration supporting his cross-complaint, Murrey attached a transcript of Valdes testifying under oath that she posted to the Facebook group "in the interest of public safety" and "to share [her] truthful story[,]" not to make Murrey fear for his safety or to imminently cause harassment by third parties.

At best, Murrey's evidence shows that Valdes had motive to dox him, given her personal distaste for him and their ongoing legal disputes. This inference provides a basis for Murrey to argue that Valdes "inten[ded] to place [Murrey] in reasonable fear for his . . . safety" (Pen. Code, § 653.2, subd. (a)), but it does not "conclusively establish[]" unlawful intent as a matter of law. (*Flatley*, *supra*, 39 Cal.4th at p. 320; *Dziubla*, *supra*, 59 Cal.App.5th at p. 151 ["[I]t is not sufficient that plaintiff[] can reasonably *argue* or offer *some evidence* that defendant's conduct was unlawful."].)

Murrey argues that because "Valdes publish[ed] [the] private messages" that he had sent to her on the app in 2019 "in an environment where other users were simultaneously posting death threats and branding him a murderer" (i.e. the Facebook group), "[t]he reasonable inference is that Valdes intended, or at minimum was reckless as to whether, her contributions would

10

cause [Murrey] fear for his safety." Recklessness, which Murrey concedes his evidence arguably shows, does not satisfy the requirements of the doxing statute. (Pen. Code, § 653.2, subd. (a).)

Based on disputed intent alone, we can conclude that Murrey has not demonstrated Valdes's activity constituted criminal doxing as a matter of law. (*Dziubla*, *supra*, 59 Cal.App.5th at pp. 152–153.) Because Valdes's protected activity is not subject to the illegality exception to the anti-SLAPP statute, the trial court should have determined whether Murrey demonstrated a probability of prevailing on his causes of action for doxing, negligence, civil harassment, civil extortion, gender violence, false light, IIED, cyberbullying, and conspiracy to commit the aforesaid. We remand the matter to the trial court for that determination. (See *Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1527 ["the more prudent course is to remand the matter to the trial court to determine in the first instance whether [the plaintiff] demonstrated a reasonable probability of prevailing on the merits"].)

B.     *Reasonable Probability of Prevailing on the Merits*

Valdes also argues that the trial court erred in finding that Murrey demonstrated a reasonable probability of prevailing on his claims for abuse of process, conspiracy to abuse process, and malicious prosecution.

"A claim has [the] 'minimal merit' " required to survive an anti-SLAPP motion "if it is ' "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [Murrey] is credited." ' [Citations.]" (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 537 (*Gruber*), italics omitted.) Therefore, "when the . . .

court examines [Murrey's evidence] filed in support of [his] second step burden, the court must consider whether [Murrey] has presented sufficient evidence to establish a prima facie case on [his] causes of action, and . . . when the . . . court considers [Valdes's] opposing [evidence], the court cannot weigh [it] against [Murrey's evidence], but must only decide whether [Valdes's] evidence], as a matter of law, defeat[s] [Murrey's] supporting evidence." (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 184, italics omitted.)

C.      *Malicious Prosecution*

Murrey alleges that Valdes maliciously brought two actions against him: (1) the SLAPPback lawsuit Valdes filed in July 2024 and (2) Valdes's unsuccessful petition for a civil harassment restraining order.  Neither is sufficient to sustain a cause of action for malicious prosecution.  Valdes's SLAPPback lawsuit has not yet been terminated.  (*Gruber*, *supra*, 48 Cal.App.5th at p. 537 ["To prevail on a claim for malicious prosecution, a plaintiff must establish[,]" among other things, that "the prior action was terminated in the plaintiff's favor on the merits."].)  And "the unsuccessful filing of a petition for an injunction under [the civil harassment statute] may not form the basis for a malicious prosecution action." (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1574 (*Siam*); see also *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 970 (*Kenne*) [same].)

Because Murrey's cause of action for malicious prosecution is based upon a lawsuit that has not yet been decided and an unsuccessful civil harassment restraining order petition, "the cause of action fails as a matter of law.  It follows that the trial court erred in denying [Valdes's] [anti-SLAPP motion] as it

12

applied to the" malicious prosecution cause of action. (*Siam*, *supra*, 130 Cal.App.4th at p. 1574.)

D. *Abuse of Process and Conspiracy*

"To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*).) "Malicious prosecution and *abuse of process* are distinct. The former concerns a meritless lawsuit (and all the damage it inflicted). The latter *concerns the misuse of the tools the law affords litigants once they are in a lawsuit* (regardless of whether there was probable cause to commence that lawsuit in the first place)." (*S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 41–42 (*S.A.*).)

The trial court erred in determining that Murrey demonstrated minimal merit on his abuse of process claim because he proffered evidence "sufficient to support an inference that Valdes's ulterior motive for filing the [civil harassment] restraining order was to harass" him. But "the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169.) "Alternatively stated, neither the initiation of a meritless claim nor the continued prosecution of a claim after it becomes apparent the claim is meritless can support an abuse of process cause of action." (*S.A.*, *supra*, 229 Cal.App.4th at p. 42.)

The only other plausible anchors for Murrey's abuse of process claim are his allegations that Valdes "fak[ed] evidence"

13

and "intentionally misrepresented facts to the court[]" during the restraining order proceedings.  These allegations also fail to support his cause of action, as the presentation of false evidence or testimony is protected by the litigation privilege.  (Civ. Code, § 47, subd. (b); *Rusheen*, *supra*, 37 Cal.4th at p. 1058 [collecting cases wherein the litigation privilege barred abuse of process claims based on the presentation of false evidence].)

Murrey also argues that his abuse of process claim "arises in part from extra[]judicial conduct: the social media campaign, [the] GoFundMe page[,] [and] impersonation accounts[.]"  By its nature, an abuse of process claim cannot stem from purely extrajudicial acts.  (*Rusheen*, *supra*, 37 Cal.4th at p. 1056 ["The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed."]; *Meadows v. Bakersfield Sav. & Loan Assn.* (1967) 250 Cal.App.2d 749, 753 ["[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice."].)  Murrey provides no authority supporting this novel proposition.  (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 ["Points must be supported by reasoned argument[] [and] authority, . . . or may be deemed forfeited."].)

Because Murrey failed to demonstrate a reasonable probability of prevailing on the merits of his abuse of process claim, his derivative conspiracy claim also fails.  (*Kenne, supra,* 230 Cal.App.4th at p. 969 ["[F]ailure to show a probability of success on . . . the underlying tort claim[] . . . bars [the plaintiff's] conspiracy claim as a matter of law."].)

14

## DISPOSITION

The order denying the anti-SLAPP motion is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court is directed to (1) grant Valdes's anti-SLAPP motion as to Murrey's causes of action for abuse of process and malicious prosecution; (2) strike all allegations from Murrey's conspiracy cause of action deriving from his abuse of process claim; and (3) determine whether Murrey has demonstrated a reasonable probability of prevailing on the merits of his doxing, negligence, civil harassment, civil extortion, gender violence, false light, IIED, cyberbullying, and remaining conspiracy causes of action. Valdes is entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
GOORVITCH

We concur:



_____, Acting P. J.
CHAVEZ



_____, J.
RICHARDSON

15